UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 25, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Shawanda T. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
      Civil No. 23-2663-CDA

Dear Counsel:

On October 2, 2023, Plaintiff Shawanda T. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 15, 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

### I.   PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on July 1, 2019, alleging a disability onset of June 15, 2019. Tr. 398-401. Plaintiff's claims were denied initially and on reconsideration. Tr. 262-65, 268-273. On October 6, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 177-238. Following the hearing, on December 1, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 143-68. The Appeals Council denied Plaintiff's request for review, Tr. 1-7, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on October 2, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Shawanda T. v. O'Malley*
Civil No. 23-2663-CDA
September 25, 2024
Page 2

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since June 15, 2019, the alleged onset date." Tr. 148. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease of the cervical, thoracic, and lumbar spines; obesity; carpal tunnel syndrome; and degenerative joint disease of the knees." Tr. 149. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "neutrophilic leukocytosis with intermittent thrombocytosis, hypertension, gastroesophageal reflux disease (GERD), and lipodermatosclerosis." Tr. 149. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 150. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b). Further, the claimant needs to alternate positions between sitting and standing every 30 minutes without having to leave the workstation or abandon tasks. She can occasionally climb ramps and stairs. She can occasionally stoop and crouch. She should never climb ladders, ropes or scaffolds. She should never kneel or crawl. She can balance on even surfaces and can stand and walk on level terrain. She can tolerate occasional exposure to extreme heat, extreme cold, humidity, vibration, concentrated respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas, and hazards of unprotected heights and dangerous, unguarded machinery. She can frequently reach and handle (perform gross manipulation) with the upper extremities.

Tr. 153. The ALJ determined that Plaintiff was unable to perform past relevant work as a correctional officer (work in the kitchen) (DOT[3] #372.667-018) and a correction officer head

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of*

(DOT #372.137-010) but could perform other jobs that existed in significant numbers in the national economy. Tr. 160. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 162.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff contends that the RFC was not supported by substantial evidence because the ALJ failed to apply the proper legal standards when assessing Plaintiff's exertional capacity. ECF 11, at 7-19. She contends that the ALJ failed to conduct a function-by-function assessment of Plaintiff's ability to perform the physical requirements of light work and conflated the RFC assessment with a symptom analysis. *Id.* Second, Plaintiff avers that the ALJ failed to properly consider Plaintiff's lipodermatosclerosis at step two, which infected each step in the sequential evaluation. *Id.* at 19-22. Defendant counters that substantial evidence supported the ALJ's RFC because this Court "can plainly trace the ALJ's reasoning in finding Plaintiff's ability to perform the relevant functions required by light work[,]" and that the ALJ properly determined Plaintiff's lipodermatosclerosis was not a severe impairment. ECF 15, at 7-20.

After carefully reviewing the record, the Court determines that the ALJ erred in assessing Plaintiff's RFC. A claimant's RFC represents "the most [they] can still do despite [their] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by function basis, how they affect [the claimant's] ability to work.'" *Thomas v.*

---

*Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Shawanda T. v. O'Malley*
Civil No. 23-2663-CDA
September 25, 2024
Page 4

*Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  Pursuant to Social Security Ruling ("SSR") 96-8p, an RFC assessment must include an evaluation of a claimant's ability to perform the physical functions listed in 20 C.F.R. § 416.945(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that "may reduce [a claimant's] ability to do . . . work."  20 C.F.R. § 416.945(b); *see* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

Only after such an analysis may an ALJ express RFC in terms of the exertional level of work of which the ALJ believes the claimant to be capable.  *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021).  As *Dowling* explained, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it."  986 F.3d at 387 (alteration in original) (citation omitted).  Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions.  *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Plaintiff argues that the ALJ failed to analyze Plaintiff's ability to sit, stand, walk, lift, carry, push, and pull.  *See* ECF 11, at 7-19.  With respect to walking, Plaintiff maintains that the ALJ's RFC "is legally insufficient to allow for judicial review" because "the RFC determination is entirely silent about how long Plaintiff can walk on level terrain in an eight-hour workday."  *Id.* at 13.  Plaintiff avers that substantial evidence shows Plaintiff's impaired capacity for prolonged walking and that "the "ALJ recounted examinations documenting Plaintiff's gait to be cautious, guarded, and antalgic," yet the RFC merely states that Plaintiff "can stand and walk on level terrain."  *Id.*

The Court agrees that the ALJ committed reversible error by failing to explain how the evidence supports the RFC's implicit conclusion regarding Plaintiff's ability to walk at a light exertional level.  Here, the ALJ evaluated the opinions of three sources who assessed Plaintiff's ability to walk.  Plaintiff's treating orthopedist, Mr. Hjorth, Physician Assistant – Certified ("PA-C"), evaluated Plaintiff's left knee pain and opined, among other things, that Plaintiff's "[g]ait pattern show[ed] mild favoring of involved knee," and Plaintiff "was advised to avoid aggravating activities."  Tr. 159, 682.  The ALJ found Mr. Hjorth's opinion unpersuasive, concluding that "[w]hile supported by a clinical interview and physical examination," Mr. Hjorth's opinion "[was] too vague and [was] not akin to any exertional level."  Tr. 159.

Next, the ALJ considered the opinion of the consultant at the initial level, Dr. C. Pio Roda, M.D.  Dr. Pio Roda opined, among other things, that Plaintiff was capable of light work, limited Plaintiff to walking for six hours in an eight-hour workday, and "did not find [Plaintiff] to have any additional nonexertional limitations."  Tr. 159, 243-44.  The ALJ did not find Dr. Pio Roda's "opined full range of light work fully persuasive."  Tr. 159.  As to supportability, the ALJ found the opinion "supported by citations to the medical and nonmedical evidence."  Tr. 159.  As to consistency, the ALJ noted that Dr. Pio Roda "only found the claimant to have one severe impairment: degenerative disc disease," and found that the opinion was "inconsistent with the claimant's other impairments of obesity, carpal tunnel syndrome, and degenerative joint disease

*Shawanda T. v. O'Malley*
Civil No. 23-2663-CDA
September 25, 2024
Page 5

of the knees." Tr. 159. The ALJ concluded that these impairments "were not adequately considered[,]" and "would have resulted in greater limitations." Tr. 159.

The ALJ also evaluated the opinion of the consultant at the reconsideration level, Dr. Gurcharan Singh, M.D., who found Plaintiff "to only have degenerative disc disease as a severe impairment" and opined, among other things, that Plaintiff was capable of light work, limited Plaintiff to walking for six hours in an eight-hour workday, and "found [Plaintiff] to have postural, manipulative, and environmental limitations." Tr. 159, 253-57. The ALJ found these limitations opined by Dr. Singh "partially persuasive." Tr. 159. As to supportability, the ALJ found that "the limitations [we]re supported by citations to the medical and nonmedical evidence." Tr. 159. As to consistency, the ALJ concluded that the limitations "[we]re not fully consistent with the objective and subjective evidence." Tr. 159-60. The ALJ found that Plaintiff's "complaints of being unable to stand or sit for prolonged periods warrants the option to alternate positions[,]" and that Plaintiff's "degenerative joint disease of the left knee would make stooping and kneeling very difficult." Tr. 160.

The Court agrees with Plaintiff that the ALJ's RFC lacks the support of substantial evidence. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking* or standing[.]" 20 C.F.R. § 404.1567(b) (emphasis added). "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983). Here, the ALJ limited Plaintiff to performing light work with several additional restrictions, including limiting Plaintiff to "walk on level terrain." Tr. 153. However, the ALJ found Drs. Pio Roda's and Singh's opinions, both of which limited Plaintiff to walking for six hours in an eight-hour workday, "not fully persuasive" and "partially persuasive," respectively. Tr. 159-60. The ALJ offered no explanation for this incongruity. Moreover, the ALJ provided no analysis that would permit the Court to understand how they ultimately determined that Plaintiff could perform the walking requirements of light work.[4] Because the inconsistency between the ALJ's analysis and the RFC "frustrate[s] meaningful review" of the ALJ's decision, remand is "appropriate." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

---

[4] The RFC assessment *does* state that Plaintiff "needs to alternate positions between sitting and standing every 30 minutes without having to leave the workstation or abandon tasks." Tr. 153. But the ALJ's decision provides no insight into how this provision affects the length of time that Plaintiff is able to walk during a workday. The ALJ acknowledged that the vocational expert ("VE") was "asked about the courier position and opportunity to alternate between sitting and standing[,]" and noted that the VE "responded that when driving, they are sitting and when delivering they are standing and/or walking," and that "there is a lot of flexibility in that position that offers adjustments." Tr. 161, 230-31. However, this does not explain how the sit/stand provision accounts for the length of time that Plaintiff is required to walk at a light exertional level.

The potential harm from this error is palpable due to the conflicting record evidence surrounding Plaintiff's ability to walk. Here, the ALJ made inconsistent findings on this point. In some instances, the ALJ noted that Plaintiff's walking was cautious, guarded, or antalgic. *See* Tr. 151 ("[Plaintiff] had an abnormal gait . . . ."), 153-54 (Plaintiff's Function Reports "indicated difficulties with . . . walking," among other things), 155 (Plaintiff "ambulated cautiously and guardedly" in both November 2019 and in January 2021), 156 (Plaintiff "again ambulated cautiously and guarded" in April 2021, had a "cautious and guarded gait" in June 2021, and "had an antalgic gait" in October 2022), 157 (Plaintiff's "gait pattern showed mild favoring of the involved [knee]" in August 2021), 158 (Plaintiff testified that "[s]he even had difficulty walking from the car to the store. She had to take a break after this walking."). In other portions of the narrative, the ALJ characterized Plaintiff's ability to walk as normal. *See* Tr. 151 ("[S]he did not use an assistive [walking] device."), 156 ("[S]he was also noted to have a normal gait and station and ambulated unassisted" in April 2021, Plaintiff's "gait and station were normal" in December 2021, and Plaintiff's "gait was normal" in May 2022). SSA regulations require the ALJ to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Because the ALJ's evaluation of this evidence "was internally inconsistent," and there appears to be no reconciliation of these inconsistencies, the Court's ability to trace the ALJ's reasoning is impeded, making remand necessary. *Rodney G. v. Kijakazi*, No. BAH-22-3007, 2023 WL 6465436, at *4 (D. Md. Oct. 3, 2023) (citing *Mallett v. Berryhill*, No. 5:18-CV-241-D, 2019 WL 2932776, at *4 (E.D.N.C. June 17, 2019)).

The Fourth Circuit has declined to adopt a *per se* rule requiring remand when an ALJ fails to perform an explicit function-by-function analysis. *See Mascio*, 780 F.3d at 636. However, when a function is "critically relevant to determining [a claimant's] disability status," remand for failure to perform such an analysis is appropriate. *Dowling*, 986 F.3d at 389. Had the ALJ properly evaluated Plaintiff's ability to walk, they may have found Plaintiff to possess greater limitations in walking that, in turn, could have altered the ultimate disability determination in this case. *See* ECF 11, at 18-19 (noting that if Plaintiff were limited to a sedentary RFC, she would be found disabled under Grid Rule 201.10). Thus, remand is warranted. Because the case is being remanded on these grounds, I need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.     CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

*Shawanda T. v. O'Malley*
Civil No. 23-2663-CDA
September 25, 2024
Page 7

        Sincerely,

        /s/

        Charles D. Austin
        United States Magistrate Judge